UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MESA UNDERWRITERS SPECIALTY
INSURANCE COMPANY,

     Plaintiff,

     v.                            Case No. 3:23-CV-960-CCB

WCEDWARDS4 INC, et al.,

     Defendants.

## OPINION AND ORDER

Ripe before the Court is Plaintiff Mesa Underwriters Specialty Insurance Company's ("MUSIC's") motion for judgment on the pleadings. In the operative amended complaint, MUSIC seeks a declaratory judgment that it owes no duty to defend or indemnify its insured, Defendant WCEdwards4, Inc. d/b/a Far East Lounge ("Far East"), in connection with lawsuits against it in Indiana state courts ("the Underlying Lawsuits"). MUSIC contends that the underlying plaintiffs' injuries are excluded from coverage under the MUSIC insurance policy issued to Far East. As a result, MUSIC argues it is entitled to judgment on the pleadings. Based on the applicable law, facts, and arguments, MUSIC's motion for judgment on the pleadings will be granted in part and denied in part.

## I.     RELEVANT BACKGROUND

*Pleadings*

The facts recounted here come from the parties' pleadings as well as the exhibits attached to MUSIC's amended complaint, namely the three amended complaints filed in the Underlying Lawsuits (ECF 25-1 through 25-3) and the MUSIC insurance policy issued to Far East ("the Policy") (ECF 25-4). As explained below, the Court need not convert the instant motion for judgment on the pleadings to a motion for summary judgment under Fed. R. Civ. P. 12(d) to consider these four exhibits.

When deciding a motion for judgment on the pleadings, the court's "review is limited to the pleadings [but] may take into consideration documents incorporated by reference to the pleadings [and] may also take judicial notice of matters of public record." *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017). Pleadings "include the complaint, the answer, and any written instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998); *see also* Fed. R. Civ. P. 7(a), 10(c). Contracts have historically been interpreted as "written instruments" and incorporated into pleadings. *N. Ind. Gun & Outdoor Shows,* 163 F.3d at 452–53. Thus, the MUSIC insurance policy attached to MUSIC's amended complaint is part of the pleadings and can be considered in deciding the instant motion for judgment on the pleadings.

A district court may also take judicial notice of matters of public record without converting a Rule 12 motion into a motion for summary judgment. *See LeClercq v. Lockformer Co.*, No. 00 C 7164, 2002 WL 31269491, at *2 (N.D. Ill. Oct. 9, 2002) (citing *Gen.*

*Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997)). "[C]ourts often take judicial notice of other judicial proceedings to establish the fact of such litigation or to recognize the outcome" but not for the truth of the matters asserted in the other litigation. *Lopez v. Pastrick*, No. 2:05-CV-452 PPS-APR, 2011 WL 2357829, at *4 (N.D. Ind. June 8, 2011) (Simon, C.J.). Here, the Court takes judicial notice of the three amended complaints in the Underlying Lawsuits to establish the fact that the underlying plaintiffs have filed the Underlying Lawsuits and have alleged certain facts in those Lawsuits. The Underlying Amended Complaints will not be used to establish the truth of the facts alleged in the Underlying Lawsuits.

*Facts*

      Far East operates a bar and lounge in Osceola, Indiana—the Far East Lounge. Defendant Tedaruies Shorter ("Tedaruies") asserts that he was at the Far East Lounge on May 6, 2023, and was injured during a shooting event at the Lounge on that date. MUSIC alleges that non-parties Marquise Shorter ("Marquise") and Billy Talton ("Talton") were also at the Far East Lounge on May 6, 2023, and were also allegedly injured as the result of the same shooting event. Talton and Marquise initiated lawsuits against Far East in Indiana state court based on injuries they sustained when they were invitees at the Far East Lounge on May 6, 2023.[1] Tedaruies was granted leave to intervene as a plaintiff in Marquise's lawsuit raising the same claim against Far East

---

[1] *Billy Talton v. Gina's Far East Lounge*, Case No. 71C01-2309-CT-000478 (ECF 25-1) and *Marquise Shorter v. Gina's Far East Lounge*, Case No. 71D06-2308-CT-000407 (ECF 25-2).

based on his own injuries.[2] Both Marquise and Tedaruies alleged that their injuries arose after they "suffered from gunshot wounds after a firearm was deployed on the premises." (ECF 25-2, 25-3). Talton's allegations were more general reciting his invitee status that day at the Far East Lounge and asserting that his injuries were the result of Far East's alleged negligence, but omitting any reference to additional details regarding the events at the Far East Lounge or how he was injured. (ECF 25-1).

Far East was the named insured on a general liability insurance policy issued by MUSIC with effective dates of August 30, 2022, to August 30, 2023 ("the Policy"). (ECF 25-4). Far East has requested defense and/or indemnity coverage under the Policy in relation to the Underlying Lawsuits. The Policy provides a broad grant of coverage for any suit seeking damages for "bodily injury[3] and property damage liability" (*Id.* at 179–84)[4] as follows:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**SECTION I—COVERAGES**

**COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   **a.**   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

---

[2] Tedaruies's complaint-in-intervention was filed under the caption *Tedaruies Shorter v. WCEdwards4, Inc. d/b/a Gina's Far East Lounge* in Case No. 71D06-2308-CT-000407. (ECF 25-3).

[3] The Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (ECF 25-4 at 191).

[4] The Policy also provides coverage for "personal and advertising injury liability" (*Id.* at 184–85) and "medical payments" (*Id.* at 185), which are not at issue.

(*Id.* at 179). The Policy explicitly narrows the scope of coverage through assorted provisions and exclusions. The following exclusions for lethal weapons and assault/battery are incorporated into the Policy.

## EXCLUSION—LETHAL WEAPONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

SECTION I—COVERAGE A BODILIY INJURY AND PROPERTY DAMAGE LIABILITY, 2. EXCLUSIONS . . . are amended and the following added:

USE OF WEAPONS

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of or resulting from the possession, ownership, maintenance, use of or threatened use of a lethal weapon, including but not limited to firearms by any person

All other terms and conditions of this policy remain unchanged.

* * * *

## ASSAULT OR BATTERY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**Assault or Battery Exclusion—Excluded Location Schedule**

**If no locations are specified below, the Assault or Battery Exclusion applies to <u>ALL</u> locations**

| Loc. # | Address |
|--------|---------|
|        |         |

I.    This insurance does not apply to locations specified in the above Schedule for "bodily injury", "property damage", "personal and advertising injury", or medical payments under Coverage C, caused by, arising out of, resulting from, or in any way related to an "assault" or "battery" when that "assault" or "battery" is caused by, arising out of, or results from, in whole or in part from:

A.    The direct or indirect instigation, instruction or direction, by you, your employees, patrons or any other persons, or

B.    The failure to provide a safe environment including but not limited to the failure to provide adequate security, or to warn of the dangers of the environment, or

C.    The negligent employment, investigation, supervision, hiring, training or retention of any person, or

D. Negligent, reckless, or wanton conduct by you, your employees, patrons or any other persons, or

E. The use of force, whether excessive or not, to protect persons or property whether or not the "bodily injury", "property damage", or "personal and advertising injury" was intended from the standpoint of the insured or committed by or at the direction of any insured; or

F. The failure to render or secure medical treatment or care necessitated by any "assault" or "battery".

This exclusion applies to all locations if the above Excluded Location Schedule is left blank. Further, this exclusion also applies to all locations specified in the Limited Assault or Battery Coverage endorsement if also attached to the policy.

II. For the purpose of this endorsement only, Exclusion **a. Expected Or Intended Injury**, part of **SECTION I—COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, is deleted and replaced by:

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

III. For the purpose of this endorsement only, the following definitions are added to **SECTION V—DEFINITIONS**

A. "Assault" means any intentional act, or attempted act or threat to inflict injury to another including any conduct that would reasonably place another in apprehension of injury, including but not limited to physical injury, sexual abuse or harassment, intimidation, verbal abuse, and any threatened harmful or offensive contact between two or more persons.

B. "Battery" means the intentional or reckless use of force including a physical altercation or dispute between persons, or offensive touching or sexual molestation against another, resulting in injury whether or not the actual injury inflicted is intended or expected. The use of force includes, but is not limited to the use of a weapon.

All other terms and conditions of this policy remain unchanged.

(*Id.* at 18, 20–21).

## II. ANALYSIS

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard for a motion for judgment on the pleadings is the same as a motion to dismiss. *Federated Mut. Ins. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 312–13 (7th Cir. 2020).

"When a plaintiff moves for judgment on the pleadings, the motion should not be granted unless it appears beyond doubt that the nonmovant cannot prove facts sufficient to support its position, and that the plaintiff is entitled to relief." *Scottsdale Ins. v. Columbia Ins. Grp., Inc.*, 972 F.3d 915, 919 (7th Cir. 2020). The "moving party must demonstrate that there are no material issues of fact to be resolved." *N. Ind. Gun & Outdoor Shows*, 163 F.3d at 452. The court views all facts and inferences in the light most favorable to the non-moving party. *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993). Courts should not hastily or imprudently grant judgment on the pleadings because policy favors "ensuring . . . each litigant a full and fair hearing on the merits of his or her claim or defense." *Federated Mut. Ins.*, 983 F.3d at 313 (quoting Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1368 (3d ed. 2002)).

Defendants raise three overarching arguments in opposition to judgment on the pleadings. Specifically, Defendants contend that (1) there are issues of material fact that must be resolved first; (2) the terms of the Policy's Lethal Weapons Exclusion are ambiguous; and (3) the Policy is unenforceable on public policy grounds.

## A.    Factual Arguments

According to Defendants, three issues of material fact preclude judgment on the pleadings. First, Defendants contend that the record includes two versions of the Policy without any clarity as to which is the true, accurate, and complete copy of the Policy applicable to the Underlying Lawsuits. Second, Defendants argue that the pleadings do not establish that nonparty Talton's "bodily injury," at issue in his underlying claim against Far East, arose out of or resulted from any lethal weapon. For this reason,

7

Defendants conclude that application of the Lethal Weapons Exclusion cannot be determined at the pleadings stage. And lastly, while no one disputes that the identity of the assailant and his intent are unknown, Defendants argue that the Assault/Battery Exclusion cannot be applied as a matter of law without a showing of the assailant's intent, which can be determined only after identifying the assailant. Each factual argument will be addressed in turn.

### 1.    Applicable Policy

Defendants argue that a factual dispute exists as to whether the copy of Far East's MUSIC Policy attached to MUSIC's amended complaint is the true, accurate, and complete copy of the Policy relevant to the claims in the Underlying Lawsuits. In the operative amended complaint, MUSIC states that "[a] copy of the Policy is attached as **Exhibit 4**." (ECF 25 at 4, ¶ 21 (emphasis in original)). In his answer to the amended complaint, Tedaruies stated he was "without sufficient information to admit or deny the allegations contained in paragraph 21." (ECF 30 at 5). Far East admitted that a copy of the Policy is attached as Exhibit 4, but also "respectfully referred the Court to original complete copies of the Policy as and [sic] for each of its terms, conditions, exclusions, endorsements, limitations, and the complete context within which any limits or deductibles may appear." (ECF 29 at 6–7).

Defendants' arguments arise from the fact that MUSIC attached a 121-page version of the Policy as Exhibit 3 to its original complaint (ECF 1-3) and a 267-page version of the Policy as Exhibit 4 to its amended complaint (ECF 25-4). Neither Defendant describes the substantive differences between the two exhibits or argues that

8

those differences are material to the outcome of this case. Without developing any authority or a fulsome argument, they appear to challenge whether the insurance policy applicable to the Underlying Lawsuits has been identified and authenticated.

First, the Court's own review of the exhibits shows that Exhibit 4 attached to the amended complaint contains duplicates of at least the Lethal Weapons, Assault/Battery, Liquor Liability, and Participants Exclusions central to the parties' arguments on the instant motion.[5] Second, the language of the relevant Policy provisions is the same in Exhibit 3 and Exhibit 4. Third, neither Defendant disputes the language of the relevant Policy provisions, and both rely on the same language in their opposition to MUSIC's motion for judgment on the pleadings. And lastly, both Far East and MUSIC—the parties to the Policy—have agreed that Exhibit 4 is a copy of the applicable Policy.[6] *Cf. Monticello Ins. v. Mike's Speedway Lounge, Inc.*, 949 F. Supp. 694, 697–98 (S.D. Ind. 1996) (finding no genuine dispute of material fact when underlying plaintiff, who was not a party to the defendant's insurance policy, argued the insurer's exhibit to its motion for summary judgment was not the policy in question, but where the insurer and the named insured, also the underlying defendant, admitted that the exhibit was the policy in question).

---

[5] *Compare* ECF 1-3 at 25, *with* ECF 25-4 at 18, 160 (Lethal Weapons). *Compare* ECF 1-3 at 27–28, *with* ECF 25-4 at 20–21, 162–63 (Assault/Battery). *Compare* ECF 1-3 at 26, *with* ECF 25-4 at 19, 161 (Participants). *Compare* ECF 1-3 at 45, 67, *with* ECF 25-4 at 38, 60, 180, 202 (Liquor Liability).

[6] In its answer to MUSIC's original complaint, Far East also admitted that Exhibit 3 is a copy of the Policy with the same qualifiers used in its answer to the amended complaint. (*See* ECF 15 at 67–7).

On this record, there is no issue of material fact as to whether Exhibit 4 to MUSIC's amended complaint is the applicable insurance policy. *See N. Ind. Gun & Outdoor Shows*, 163 F.3d at 452.

### 2.    Talton's and Marquise's Underlying Lawsuits

Defendants are correct that the operative Talton amended complaint in state court makes no mention of firearms, lethal weapons, or his being shot on May 6, 2023. Talton's amended complaint is concise with only four rhetorical paragraphs alleging that (1) he was injured on May 6, 2023, as the result of Far East's negligence; (2) Far East "failed to maintain the premises, provide adequate security, and/or warn [Talton] of a dangerous and/or hazardous condition;" (3) he was an invitee on Far East's premises at the time of the "incident;" and (4) he "sustained personal injuries . . . in an amount yet uncertain" as a "direct and proximate result" of Far East's "carelessness and negligence." (ECF 25-1 at 2). Based partly on Talton's underlying claims, MUSIC initiated its declaratory judgment action in this Court with its original complaint naming Far East, Tedaruies, Marquise, and Talton as defendants.

In their joint answer to that original complaint, Talton and Marquise admitted MUSIC's allegations that their Underlying amended complaints alleged that they were injured "during a shooting event" and that they suffered injuries allegedly received when they were allegedly shot on May 6, 2023. (ECF 12 at 4–5, ¶¶ 15, 17, 19). Based on this answer, MUSIC argues that Talton made a judicial admission that implicated a gun or firearm in his injury. Relying on that admission, MUSIC contends that the Lethal Weapons Exclusion in the Policy excludes coverage for Far East on Talton's Underlying

Lawsuit. While not explicitly raised by the parties in briefing the instant motion for judgment on the pleadings, the issues of judicial admissions and coverage under the Lethal Weapons Exclusion also arise as to Marquise and his Underlying Lawsuit.

"Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them." *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995). "[T]hey are not evidence at all but rather have the effect of withdrawing a fact from contention." *Id.* (internal quotation and citations omitted). "A judicial admission is conclusive, unless the court allows it to be withdrawn . . . ." *Id.*

While Talton and Marquise admitted to the involvement of a gun or other "shooting" weapon in their joint answer to MUSIC's original complaint, the pleadings arising from MUSIC's amended complaint control. MUSIC's now operative amended complaint restates the same allegations regarding the Underlying Lawsuits attaching the Underlying amended complaints in support. However, MUSIC's amended complaint only names Far East and Tedaruies as defendants. Therefore, Talton and Marquise—no longer parties to this action—were under no obligation to file an answer to MUSIC's amended complaint and did not. Only Far East and Tedaruies filed answers to MUSIC's amended complaint.

"When a party has amended a pleading, allegations and statements in earlier pleadings are not considered judicial admissions." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 736 (7th Cir. 2002). The amended pleading supersedes the prior pleading, and "[t]he prior pleading is in effect withdrawn as to all matters not restated in the amended

11

pleading and becomes functus officio[7]." *Id.* "Under some circumstances, a party may offer earlier versions of its opponent's pleadings as evidence of the facts therein, but they are not judicial admissions, and the amending party may offer evidence to rebut its superseded allegations." *Id.*

MUSIC's original complaint has been superseded by its amended complaint. While MUSIC repeated without changing its allegations against Talton and Marquise in the amended complaint, Talton and Marquise did not restate their answers because they were under no obligation as non-parties to do so. Therefore, Talton and Marquise's joint answer to the original complaint is effectively withdrawn as a pleading and a judicial admission. *See id.* Accordingly, the Court takes judicial notice that Talton and Marquise's joint answer to MUSIC's original complaint was filed in this case and that Talton and Marquise answered the way they did. In deciding MUSIC's instant motion for judgment on the pleadings, however, the Court cannot and will not consider Talton and Marquise's joint answer for the facts it asserts about the involvement of a gun or other shooting weapon in Talton's and Marquise's injuries on May 6, 2023. *See Lopez v. Pastrick*, 2011 WL 2357829, at *4.

With no further facts in the operative pleadings regarding how, or by what method, Talton and Marquise incurred their injuries on May 6, 2023, the possibility remains that Defendants as nonmovants could identify facts sufficient to support their

---

[7] The term "*functus officio*" translates from Latin as "having performed his or her office" and means that an officer is "without further authority or legal competence because the duties and functions of the original commission have been fully accomplished." FUNCTUS OFFICIO, Black's Law Dictionary (12th ed. 2024).

position that the Lethal Weapons Exclusion does not apply to Talton's and Marquise's Underlying amended complaints. *See Scottsdale Ins.*, 972 F.3d at 919. Based on this issue of material fact, MUSIC is not entitled to judgment on the pleadings as to Talton's or Marquise's Underlying Lawsuit. *See N. Ind. Gun & Outdoor Shows*, 163 F.3d at 452.

### 3.    Intent of Assailant

Defendants also argue that judgment on the pleadings is improper because the pleadings include insufficient facts to determine the intent of the shooter. Defendants contend that the shooter's intent determines whether the Assault/Battery Exclusion applies to the Underlying Lawsuits. In the Assault/Battery Exclusion, assault is defined as an "intentional act," and battery is defined to include "intentional or reckless use of force." (ECF 25-4 at 21). Indeed, "Indiana law requires a showing of "specificity to the intent" before insurance coverage will be denied under an exclusion for intentional conduct. *Sans v. Monticello Ins.*, 676 N.E.2d 1099, 1103 (Ind. Ct. App. 1997) (internal citation omitted).

MUSIC does not dispute that the shooter's intent is unknown and that his intention is relevant to a determination of whether the Assault/Battery Exclusion applies. Instead, MUSIC argues that the assailant's intention is immaterial to the overarching coverage question here. MUSIC points to the Lethal Weapons Exclusion, which applies when the "bodily injury" at issue arises from a lethal weapon, with no intent requirement. As such, MUSIC concludes that coverage is precluded in this case based on the Lethal Weapons Exclusion regardless of the assailant's intent or whether the Assault/Battery Exclusion applies.

This Court's opinion in *Pogue v. Money Flow Incorporated*, CASE NO.: 1:22-cv-0450-HAB-SLC, 2023 WL 5558997 (N.D. Ind. Aug. 28, 2023) (Brady, C.J.) enforcing the identical Lethal Weapons Exclusion is instructive. In *Pogue*, MUSIC issued a very similar general liability policy to a bar where a patron, Mr. Pogue, was shot multiple times by another patron, Mr. Suggs. 2023 WL 5558997, at *1. Even though the assailant's identity was known, neither his identity nor his intentions when he shot Mr. Pogue were mattered in this Court's analysis of whether the Lethal Weapons Exclusion applied. *See id.* at *4–*5. The Court reviewed the plain language of the Exclusion, noted that Mr. Pogue claimed no damages aside from those resulting from the use of a firearm by Mr. Suggs, and concluded that the Exclusion applied based solely on the involvement of a firearm in Mr. Pogue's bodily injury. *Id.*

Here, both of the Shorters' Underlying amended complaints allege that they "suffered from gunshot wounds after a firearm was deployed on the premises." (ECF 25-2 at 2, ¶ 2 (Marquise); ECF 25-3 at 1, ¶ 3 (Tedaruies)). In his answer to MUSIC's amended complaint, Tedaruies "admits that he was injured during a shooting event on May 6, 2023[,] at Far East Lounge" and that he "seeks damages for the injuries he allegedly received when he was allegedly shot on May 6, 2023." (ECF 30 at 3,¶ 13; *id.* at 5, ¶ 20). Based on Tedaruies's judicial admission alone, a gun/firearm was involved in Tedaruies's bodily injury at the Far East Lounge. As such, the Lethal Weapons Exclusion is implicated in Tedaruies's claims consistent with this Court's finding in *Pogue* that the same MUSIC Lethal Weapons Exclusion applied when a firearm was

14

involved in the underlying plaintiff's bodily injury. *See* Pogue, 2023 WL 5558997, at *4–*5.

With no factual issue remaining to preclude application of the Lethal Weapons Exclusion, at least to Tedaruies Shorter's Underlying Lawsuit, the unresolved and determinative fact of the assailant's intent in determining whether the Assault/Battery Exclusion applies will only be material for purposes of judgment on the pleadings if the Legal Weapons Exclusion is unenforceable for legal reasons.

### B.    Legal Arguments

#### 1.    Lethal Weapons Exclusion

Defendants contend that the Lethal Weapons Exclusion is ambiguous and should be construed in favor of coverage for Far East. Specifically, Far East argues that the Lethal Weapons Exclusion is ambiguous because it conflicts with another exclusion in the Policy, the "Expected Or Intended Injury" exclusion. Tedaruies separately argues that the Lethal Weapons Exclusion is ambiguous as to whether it incorporates the Expected/Intended Injury Exclusion, and its inherent intent requirement, when read in conjunction with a modification of the Expected/Intended Injury Exclusion in the Assault/Battery Exclusion.

"A federal court sitting in diversity has the obligation to apply the law of the [forum] state as it believes the highest court of the state would apply it if presented with the issue." *Allstate Ins. v. Keca*, 368 F.3d 793, 796 (7th Cir. 2004). Thus, this Court must apply Indiana law to interpret the terms of the MUSIC Policy. "Under Indiana law, insurance contracts are governed by the same rules of construction as other contracts."

*Ind. Funeral Dirs. Ins. Trust v. Trustmark Ins.*, 347 F.3d 652, 654 (7th Cir. 2003). As with other contracts, "the interpretation of an insurance policy presents a question of law to be decided by the court." *Cincinnati Ins. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994) (citing *Tate v. Secura Ins.*, 587 N.E.2d 665, 668 (Ind. 1992)). The goal in interpreting insurance policies "is to ascertain and enforce the parties' intent as manifested in the insurance contract." *Masten v. AMCO Ins.*, 953 N.E.2d 566, 569 (Ind. Ct. App. 2011).

If the Policy is "clear and unambiguous, it should be given its plain and ordinary meaning." *Eli Lilly & Co. v. Homes Ins.*, 482 N.E.2d 467, 470 (Ind. 1985). However, "ambiguity does not arise from mere disagreement over a policy term's meaning—that is, where one party asserts an interpretation contrary to that asserted by the opposing party." *Erie Indem. Co. for Subscribers at Erie Ins. Exch. v. Est. of Harris by Harris*, 99 N.E.3d 625, 630 (Ind. 2018) (internal quotation and citation omitted). "Rather, insurance policy provisions are ambiguous only if they are susceptible to more than one reasonable interpretation." *Id.* (quotation omitted).

"Where the contract is plain and its meaning clear, the court will not change its evident meaning, by rules of construction, and thereby make a new contract for the parties." *Caliber One Indem. Co. v. O & M Const. Co.*, No. 1:04-CV-00417-LJM-VS, 2004 WL 2538646, at *3 (S.D. Ind. Sept. 29, 2004) (citing *Colonial Penn Ins. v. Guzorek*, 690 N.E.2d 664, 669 (Ind. 1997)). If a provision of an insurance policy is ambiguous, it will be construed in favor of the insured, especially if it is a provision limiting coverage. *Erie*

*Ins. Exch. v. Sams*, 20 N.E.3d 182, 187 (Ind. Ct. App. 2014) (quoting *Meridian Mut. Ins. v. Auto-Owners Ins.*, 698 N.E.2d 770, 773 (Ind. 1998)).

Under the general Bodily Injury and Property Damage Liability provision of the Policy, coverage is excluded for expected or intended injury as follows:

> **COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
>
> **SECTION I—COVERAGES**
>
> **COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> * * * *
>
> **2.   Exclusions**
>
> This insurance does not apply to:
>
> **a.   Expected Or Intended Injury**
>
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

(*Id*. at 180). In the Assault/Battery Exclusion, this Expected/Intended Injury Exclusion is explicitly deleted and replaced with the single statement that coverage is excluded for "'[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured." (*Id*. at 20). The Assault/Battery Exclusion thus eliminates the "use of reasonable force" exception found in the Expected/Intended Injury Exclusion but only for purposes of the Assault/Battery Exclusion. (*See id*.). The Lethal Weapons Exclusion does not address the Expected/Intended Injury Exclusion in any way. (*Id*. at 18).

The plain language of the applicable exclusions shows that the Lethal Weapons Exclusion and the Expected/Intended Injury Exclusion coexist, do not conflict with or diminish the other, and are not ambiguous. Each Exclusion bars coverage for injuries suffered in different situations. The Lethal Weapons Exclusion bars coverage for injury caused by use or possession of a lethal weapon. The Expected/Intended Injury

Exclusion bars coverage for injuries expected or intended by the insured. This expectation or intent inherent in the Expected/Intended Injury Exclusion distinguishes it from the Lethal Weapons Exclusion, which states no intent requirement.

There could be situations when these exclusions overlap—where a lethal weapon is used or possessed in conjunction with an injury that the insured expected or intended. Such overlap, however, constitutes only a redundancy by which coverage could be barred based on either exclusion. That redundancy does not make either provision meaningless or ambiguous. *See Neighborhood Hous. Servs. of Am., Inc. v. Turner-Ridley*, 742 F. Supp. 2d 964, 972 (N.D. Ind. 2010) (citing *In re Boelson Trust,* 830 N.E.2d 37, 44 (Ind. Ct. App. 2005)*, overruled on other grounds, Univ. of S. Ind. Found. v. Baker,* 843 N.E.2d 528 (Ind. 2006)).

Tedaruies contends that when read together, the three Exclusions reveal inconsistencies that make the Lethal Weapons Exclusion ambiguous as to an intent requirement and incorporation of the Expected/Intended Injury Exclusion. But the Lethal Weapons Exclusion mentions neither the Expected/Intended Injury Exclusion nor an intent requirement. The Expected/Intended Injury Exclusion does not reference the Lethal Weapons or the Assault/Battery Exclusions but does include an intent requirement. The Assault/Battery Exclusion explicitly incorporates part of the Expected/Intended Injury Exclusion and an intent requirement without any mention of the Lethal Weapons Exclusion. Those differences in the plain language of the Exclusions are not ambiguous and establish the parties' intent that each Exclusion stand alone.

18

The canon of construction *expressio unius est exclusion alterius*, or "to express or include one thing implies the exclusion of the other," helps interpret the language of the Exclusions. Black's Law Dictionary (12th ed. 2024). The parties intentionally incorporated language of an intent requirement into both the Expected/Intended Injury Exclusion and the Assault/Battery Exclusion. As a result, the omission of intent language in the Lethal Weapons Exclusion implies the parties' agreement to exclude the intent requirement as to the Lethal Weapons Exclusion. Similarly, the parties' reference to the Expected/Intended Injury Exclusion in the Assault/Battery Exclusion implies the exclusion of the Expected/Intended Injury Exclusion in the Lethal Weapons Exclusion. In other words, the parties made clear their intent to treat all three of these exclusions as separate and apart from each other through their decision to include and exclude precise language in each provision. *See Masten*, 953 N.E.2d at 569.

The parties' language in the Exclusions is clear and does not create conflict between them or make any one superfluous or meaningless. Defendants have not shown that the Exclusions—and by extension the Policy—are susceptible to any other reasonable interpretation. *See Erie Indem. Co.*, 99 N.E.3d at 630. Therefore, the Lethal Weapons Exclusion is not ambiguous.

### 2. Public Policy

Lastly, Defendants contend that the MUSIC Policy violates Indiana public policy by providing illusory coverage. Defendants argue that the Policy's Liquor Liability Exclusion and its Participants Exclusion, when read in concert with the Policy as a whole, render the Policy illusory. The Liquor Liability Exclusion provides:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**SECTION I—COVERAGES**

**COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

* * * *

**2.  Exclusions**

This insurance does not apply to:

* * * *

b.

**c.  Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph (1), (2) or (3) above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

(ECF 25-4 at 180). The Participants Exclusion provides:

## EXCLUSION—PARTICIPANTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following exclusion is added to **Paragraph 2., Exclusions of Section I—Coverage A—Bodily Injury and Property Damage Liability** . . . :

**2.  Exclusions**

This insurance does not apply to:

**Participants Exclusion**

20

    A.   "Bodily injury", "personal and advertising injury" or "medical payments" to "any person" while preparing, qualifying, auditioning, practicing, participating, working or volunteering in or for any contest, demonstration, event, exhibition, race, show, or any related or associated activities; and,

    B.   "Property damage" to the personal property of "any person" while preparing, qualifying, auditioning, practicing, participating, working or volunteering in or for any contest, demonstration, event, exhibition, race, show, or any related or associated activities.

As used in this exclusion, "any person" includes but is not limited to participants, "employees", "volunteer workers", "temporary workers" or any other person employed by, contracted by or doing volunteer work for the Named Insured, including but not limited to medical personnel, mechanics, stewards, timing officials, judges, referees, umpires, announcers, corner men, musicians, singers, stage hands, animal handlers or other officials.

All other terms and conditions of this policy remain unchanged.

(*Id*. at 161). Defendants argue that these two exclusions are very broad and preclude recovery for Far East under any reasonable set of circumstances because its business derives largely from the sale of alcoholic beverages and almost all activity at the Far East Lounge is implicated by the Exclusions.

"Generally, insurers are free to limit liability in any manner not inconsistent with public policy, and an unambiguous exclusionary clause is ordinarily entitled to enforcement." *Williams v. Safe Auto Ins.*, 980 N.E.2d 326, 330 (Ind. Ct. App. 2012) (internal quotation and citation omitted). An insurance policy in Indiana offers "illusory" coverage if the policy is "basically valueless to the insured" because the insured would "not recover benefits under any reasonably expected set of circumstances." *Nautilus Ins. v. Sunset Strip, Inc.*, No. 1:14-CV-01273-MJD, 2015 WL 4545876, at *6 (S.D. Ind. July 28, 2015) (quoting *Davidson v. Cincinnati Ins.*, 572 N.E.2d 502, 507 (Ind. Ct. App. 1991)). If an unambiguous policy is deemed illusory, the policy will not be enforced as written but "to satisfy the reasonable expectations of the

insured." *Id.* (citing *Davidson*, 572 NE.2d. at 508; *Landis v. Am. Interinsurance Exch.*, 542 N.E.2d 1351, 1354 (Ind. Ct. App. 1989)); *see also Monticello Ins.*, 949 F. Supp. at 699 (collecting cases).

Thus, when illusory coverage in an insurance policy is alleged, a two-part analysis ensues. *Sunset Strip, Inc.*, 2015 WL 4545876, at *6. First, a court must determine whether the policy is illusory, or whether it "would pay benefits under any reasonably expected set of circumstances." *Id.* (quoting *Davidson*, 572 N.E.2d at 507); *see also Monticello Ins.*, 949 F. Supp. at 699. A single hypothetical situation of coverage is not sufficient to overcome an illusory coverage challenge as the policy must "cover[] a risk reasonably anticipated by the parties." *Sunset Strip, Inc.*, 2015 WL 4545876, at *6 (quoting *Schwartz v. State Farm Mut. Auto. Ins.*, 174 F.3d 875, 881 (7th Cir. 1999)). The question becomes whether the hypothetical coverage is so "sufficiently remote [as] to be deemed illusory." *Monticello Ins.*, 949 F. Supp. at 701 (quoting *Meridian Mut. Ins. v. Richie*, 540 N.E.2d 27, 30 (Ind.), opinion vacated on reh'g, 544 N.E.2d 488 (Ind. 1989)).

If a policy is found to be illusory, a court then decides whether the insured had a reasonable expectation that the claim at issue would be covered by the policy. *Sunset Strip, Inc.*, 2015 WL 4545876, at *7. Factors in this analysis include

> whether the insured asked for specific types of coverage; whether the insurer represented that certain claims were covered; and whether the parties' insurance agents made any related representations. *See Barnes v. McCarty,* 893 N.E.2d 325, 329 (Ind. Ct. App. 2008). The Court may also consider the amount paid by the insured, *see Monticello,* 949 F. Supp. at 704, the nature of the insured's business, and the purpose for which the insured sought coverage. *See Argonaut Ins. Co. v. Jones,* 953 N.E.2d 608, 624 (Ind. Ct. App. 2011).

*Id.*

At step one, MUSIC contends that the Policy is not illusory because there are many circumstances under the Policy for which Far East could be paid benefits. MUSIC specifically references slip-and-falls on the premises, injuries from falling objects, electrical shocks from exposed wires, and food poisoning claims. Aside from these hypotheticals, the language of the Liquor Liability and Participants Exclusions provides useful insight into whether there is a "reasonably expected set of circumstances" where benefits would be paid to Far East under the Policy. *See Sunset Strip, Inc.*, 2015 WL 4545876, at *6; *Monticello Ins.*, 949 F. Supp. at 701.

The Liquor Liability Exclusion defines specific circumstances when it would apply to insureds, like Far East, that are "in the business of . . . selling, serving or furnishing alcoholic beverages." (ECF 25-4 at 180). Those circumstances include bodily injury when the injured person was intoxicated, under the legal drinking age, or under the influence of alcohol or when Far East violates a "statute, ordinance, or regulation relating to the sale, gift, distribution or use of alcoholic beverages." (*Id.*). This language does not provide as broad an exclusion of coverage as the liquor liability exclusion in *Monticello Ins.*, which stated that coverage under that policy did "not apply to bodily injury [or] property damage, arising out of or in connection with the manufacturing, selling, distributing, serving or furnishing of any alcoholic beverages." 949 F. Supp. at 696. The "arising out of or in connection with" language of the exclusion led the *Monticello Ins.* court to find coverage illusory. *Id.* at 701.

In evaluating a MUSIC liquor liability exclusion almost identical to Far East's MUSIC Policy, the *Sunset Strip, Inc.* court distinguished it from the broad language in the *Monticello Ins.* liquor exclusion. 2015 WL 4545876, at *8 n.3. As the *Sunset Strip, Inc.* court emphasized, many patrons will consume alcoholic beverages at a bar but not all, and many who do drink, will not drink enough to be under the influence of alcohol or intoxicated. *See id.* at *8 (citing cases where individuals consumed alcoholic beverages but were not intoxicated); *see also Ebert v. Ill. Cas. Co.*, 188 N.E.3d 858, 865 (Ind. 2022) (upholding a liquor liability exclusion with language similar to the MUSIC Liquor Liability Exclusion as unambiguous and not illusory). And assuming that Far East conforms to legal and ethical standards, most injuries at the Lounge will not be the result of serving patrons to the point of intoxication, serving underage individuals, and violating alcohol-related laws such that the Liquor Liability Exclusion would not apply and those injuries would be covered under the Policy. Indeed, the MUSIC Liquor Liability Exclusion appears consistent with typical "dram shop" exclusions that are routinely applied. *See, e.g., Sunset Strip, Inc.*, 2015 WL 4545876, at *8, n.3; *Nautilus Ins. v. JDW, Inc.*, CAUSE NO. 2:18-CV-190-TLS, 2021 WL 5083716, at *5–*7 (N.D. Ind. Nov. 2, 2021) (Springmann, J.) (finding Nautilus's Total Liquor Liability Exclusion excluding coverage for the same three circumstances in MUSIC's Liquor Liability Exclusion applied to a claim for violation of Indiana's dram shop statute).

So there is a reasonably expected set of circumstances—even liquor-related circumstances—where benefits would be paid under the Policy despite the language of the Liquor Liability Exclusion.

As to the Participants Exclusion, Defendants contend that language in the Exclusion, such as "any person," "participating," "participants," "event," and "any related or associated activities" (ECF 25-4 at 161), could be interpreted broadly to apply to any person who sustains bodily injury on the insured's premises for any reason. Defendants cite no cases where such an exclusion made an insurance policy illusory or even where a participant exclusion was addressed. Their unsupported conclusion that the Participants Exclusion is overbroad does not consider the finding in *Sunset Strip, Inc.* where the participants exclusion at issue similarly used lists of examples to define the individuals and "activity areas" implicated by the exclusion. 2015 WL 4545876, at *4. The court observed that while the lists were long, they did not include some of the common types of individuals or areas at the insured's premises. *Id.* at *10–*12. As a result, the court found that the plain language of the exclusion did not render the policy illusory. *Id.* at 13.

The language of the Participants Exclusion in MUSIC's Policy here similarly provides lists describing categories of persons and activities to whom the exclusion would apply. The list of categories of persons also uses the qualifying language "includ[ing] but not limited to," and the list of categories of activities uses the catchall phrase "or any related or associated activities." (ECF 25-4 at 161). Indiana courts prefer "narrow constructions of coverage exclusions even when the insured asserts an illusory coverage argument." *Sunset Strip, Inc.*, 2015 WL 4545876, at *12 (citing *Schwartz*, 174 F.3d at 879–80). An "exclusionary clause must clearly and unmistakably bring within its

scope the particular act or omission that will bring the exclusion into play." *Am. Fam. Life Assur. Co. v. Russell*, 700 N.E.2d 1174, 1177 (Ind. Ct. App. 1998).

On the surface, the qualifiers could be interpreted as expanding the scope of the Participants Exclusion to unlimited circumstances. But such open-ended qualifiers do not define acts or omissions that can be construed as "clearly and unmistakably" within the scope of the Exclusion. Therefore, the Participants Exclusion cannot be expanded beyond the list of individuals and activities specifically listed. And the list of categories of people in the Exclusion does not include several types of people who are often present at a bar, like patrons, invitees, guests, or spectators. *Cf. Sunset Strip, Inc.*, 2015 WL 4545876, at *10. Similarly, the Participants Exclusion only delineates "contest, demonstration, event, exhibition, race, [or] show" as activities at the bar clearly and unmistakably within the scope of the Exclusion. (ECF 25-4 at 161). These activities occur at bars, but do not include every possible activity. Thus, there is a reasonably expected set of circumstances—even circumstances related to defined persons and activities— where benefits would be paid under the Policy despite the Participants Exclusion.

As a result, the Liquor Liability Exclusion and the Participants Exclusion, separately or together, do not render the Policy illusory. Whether Far East had a reasonable expectation that the claim at issue would be covered by the Policy need not be addressed. *Sunset Strip, Inc.*, 2015 WL 4545876, at *7.

## III.   CONCLUSION

As discussed above, an issue of material fact remains as to whether the Lethal Weapons Exclusion precludes coverage for Far East under the MUSIC Policy for Billy

Talton's Underlying Lawsuit and Marquise Shorter's Underlying Lawsuit. However, Defendants cannot prove facts sufficient to support its position that the Lethal Weapons Exclusion does not apply to Tedaruies Shorter's Underlying Lawsuit. Moreover, the Lethal Weapons Exclusion is unambiguous, and the Policy does not violate public policy.

Therefore, MUSIC's motion for judgment on the pleadings is **GRANTED IN PART** to the extent it seeks declaratory judgment that MUSIC has no duty to defend or indemnify Far East Lounge in relation to *Tedaruies Shorter v. WCEdwards4, Inc. d/b/a Gina's Far East Lounge*, Case No. 71D06-2308-CT-000407 in St. Joseph Superior Court 6. (ECF 31). MUSIC's motion for judgment on the pleadings is **DENIED IN PART** as to its declaratory judgment claim related to *Billy Talton v. Gina's Far East Lounge*, Case No. 71C01-2309-CT-000478 in St. Joseph Circuit Court and *Marquise v. Gina's Far East Lounge*, Case No. 71D06-2308-CT-00047 in St. Joseph Superior Court 6. (ECF 31).

SO ORDERED on March 31, 2025.

  /s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT